## Commonwealth ex rel. Osborne v. Dressell

*Wardell F. Steigerwalt,* for petitioner.

*Thomas F. McBride,* Attorney General, for respondent.

HENNINGER, P. J., June 10, 1957.—On September 17, 1945, relator was sentenced by the Court of Quarter Sessions of Lehigh County to not less than two and one-half nor more than five years' imprisonment in the Lehigh County Prison on charges of sodomy, to nos. 22, 23, 24 and 25, June sessions 1945; on January 5, 1950, by the same court to two and one-half to five years' imprisonment in the same prison on additional charges of sodomy to nos. 99 and 100, September sessions 1949; and on March 17, 1953, by the same court to imprisonment of one year in the same prison on a charge of indecent assault and contributing to the delinquency of a minor, to no. 122, January sessions 1953.

It will be seen, therefore, that relator is serving a minimum of five years and a maximum of 11 years. The minimum sentence in nos. 99 and 100, September sessions 1949 was commuted to five months, but, since we are dealing in this case with maximum sentences, that commutation is irrelevant to the present inquiry.

Relator has served time in the Lehigh County Prison for the following periods: (1) From July 9, 1945, the date of his first arrest to May 3, 1948, the date of his first parole, a period of 2 years, 9 months and 24 days; (2) from October 11, 1949, the date of his second arrest, to October 19, 1949, the date of arraignment on his second offenses, a period of eight days; (3) from

October 19, 1949, to August 6, 1952, the date of his second parole, a period of 2 years, 9 months and 17 days; (4) from December 29, 1952, the date of his third arrest, to March 17, 1953, the date of his sentence on the third offense, a period of 2 months and 18 days; and (5) from March 17, 1953, to April 18, 1957, the date of filing the petition for a writ of habeas corpus, a period of 4 years, 1 month and 1 day.

It will be seen, therefore, that on April 18, 1957, relator had been a prisoner in the Lehigh County Prison since his first arrest, in this series of arrests, a total of 9 years, 11 months and 8 days. Since each recommitment was for the commission of a new crime, relator is entitled to no credit for good behavior or "street" time (Commonwealth ex rel. Brawner v. Day, 181 Pa. Superior Ct. 568, 571; Commonwealth ex rel. Meinzer v. Smith, 118 Pa. Superior Ct. 250, 254) and, therefore, to fulfill all existing sentences he would have had to serve after April 18, 1957, *at least* an additional year and 22 days, less two months commutation for good behavior on the last sentence.

We could dismiss the petition as premature, since under any interpretation of relator's total sentences, he is not now illegally detained: Commonwealth ex rel. O'Leary v. Ashe, 152 Pa. Superior Ct. 322, 324.

The nub of the contention between relator and the Parole Board is whether relator is entitled to credit against his first two sentences for the eight days spent in prison between his arrest and his arraignment in October 1949 and the 2 months and 18 days spent in prison between his arrest in 1952 and his sentencing in 1953. If he is entitled to both, his maximum sentence subject to Parole Board supervision would have expired on May 10, 1957; if to the latter but not to the former, on May 18, 1957; if to the former but not the latter, on July 28, 1957; and if to neither, on August 6, 1957.

The controlling statutes are the Act of June 22, 1931, P. L. 862, 61 PS §305; sec. 21.1(a) of the Act of August 24, 1951, P. L. 1401, added to the Act of August 6, 1941, P. L. 861, 61 PS §331.21(a); Act of May 28, 1937, P. L. 1036, 19 PS §894. The pertinent parts of these acts read as follows:

*Act of 1931, 61 PS §305:* "If any convict released on parole, as provided for in this act, shall, during the period of his or her parole, or while delinquent on said parole, commit any crime punishable by imprisonment for which he or she is at any time thereafter convicted in any court of record and . . . sentenced to the penitentiary from which said convict was released on parole, then the service of the remainder of the said term originally imposed shall precede the commencement of the term imposed for said crime . . ."

*Act of 1951, 61 PS §331.21(a):* "Any parolee under the jurisdiction of the Pennsylvania Board of Parole released from any penal institution of the Commonwealth who, during the period of parole or while delinquent on parole, commits any crime punishable by imprisonment, for which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere at any time thereafter in a court of record, may, at the discretion of the board, be recommitted as a parole violator to the penal institution from which he was paroled or to any other institution to which legally transferred. If his recommitment is so ordered, he shall be reentered to serve the remainder of the term which said parolee would have been compelled to serve had he not been paroled, and he shall be given no credit for the time at liberty on parole. . . . If a new sentence is imposed upon him to be served in the same institution from which paroled, then the service of the balance of said term originally imposed shall precede the commencement of the new term imposed for the latter crime. If a new sentence is imposed upon him to

be served in any institution other than the one from which paroled, then the service of the new term for the latter crime shall precede the commencement of the balance of the term originally imposed. The period of time for which the parole violator is required to serve shall be computed from and begin on the date that he is taken into custody to be returned to the institution as a parole violator."

*Act of 1937, 19 PS §894:* "From and after the passage of this act, all sentences for criminal offenses of persons who at the time sentence is imposed are held in custody in default of bail, or otherwise, shall begin to run and be computed from the date of commitment for the offense for which said sentence shall be imposed, unless the person sentenced shall then be undergoing imprisonment under a sentence imposed for any other offense or offenses in which case the said sentence shall begin to run and be computed, either from the date of imposition thereof or from the expiration of such other sentence or sentences, as the court shall, in its discretion, direct."

Commonwealth ex rel. Lerner v. Smith, 151 Pa. Superior Ct. 265, holds that the acts above recited do not cover the same subject matter and are not repugnant in any of their provisions. The Act of 1941, supra, provided rules and regulations for the Parole Board in the exercise of its powers. The Act of 1931, supra, relates specifically to the order of serving sentences for parole violators. While some of its provisions are also covered in the Act of 1941, supra, these duplicated provisions are in no way repugnant and therefore no problem exists because the same subject matter is repeated in the two acts. The Act of 1937, supra, was designed to assure prisoners credit against their sentences for time spent in prison awaiting trial.

Against the positive legislative provision that credit should be given, relator relies upon two provisions in

these acts to prevent its application to his case. The last clause of the Act of 1937, supra, commands that credit be given on the offense for which sentence is imposed "unless the person sentenced shall then be undergoing imprisonment under a sentence imposed for any other offense or offenses," in which case the credit in the discretion of the court may be on either offense. Commonwealth ex rel. Lerner v. Smith, supra, clarifies the meaning of this provision, page 271:

"The latter part of section 1 of the Act of 1937, 19 PS §894, would apply, for example, where a person is serving sentence in prison and is convicted while so detained for another crime which had been committed prior to his original sentence, or which was committed while serving his sentence in prison. Under such circumstances there would be no date of commitment from which the new sentence could be computed, but the court would have the discretion to direct that the second term should begin at the expiration of the first or run concurrently with the first from the date of imposition of the second."

The offense for which relator was sentenced in no. 122, January term 1953 was committed while relator was free on parole and, therefore, when sentenced he was not in jail on another offense, but he was in prison awaiting trial on that same offense. The Act of 1937 was, therefore, mandatory on the court and not discretionary. Since he was sentenced to the same prison in which he was confined awaiting trial, it was not necessary for the court to include this provision in the sentence (see section 3 of the Act of 1937, supra, 19 PS §896), for it would seem to be the duty of the warden in that case to so enter the sentence from his record of the prisoner's commitment.

The other section affording solace to relator is the last sentence in the hereinbefore quoted section of the Act of 1941, supra, namely that the period to be served

for parole violation shall be from the date that the parole violator is taken into custody *to be returned to the institution as a parole violator.* It is apparent that this clause relates to the preceding clause and is operative only when the violator has been sent to another prison to serve the sentence for the crime that constitutes the parole violation. It does not give the prisoner any additional credit; it merely prescribes the date from which credit is to begin under certain circumstances. It does not relate to detainers but only to actual custody of persons *to be returned* as parole violators.

The contention of the Board of Parole as to the 2 months and 18 days is: That that time was spent in prison by relator awaiting trial on the January 1953 charges, and not as a parole violator (see Commonwealth ex rel. Lerner v. Smith, supra, page 273) ; that under the Act of 1937, supra, the court was bound to give relator credit against its last sentence for the time spent in prison awaiting trial; that relator, having been sentenced to the same prison, must (under the Act of 1931, supra) first serve the maximum of his Parole Board sentences, and that the 2 months and 18 days spent in prison awaiting trial on the third offense is a credit against the last sentence and not against the earlier sentence.

We can find no flaw in this logic. It finds support in the well reasoned case of Commonwealth ex rel. Sullivan v. Claudy, 100 Pitts. L. J. 147, 150. It was applied in the Lerner case, supra, and in Commonwealth ex rel. Westwood v. Gackenbach, 169 Pa. Superior Ct. 637, 641, but without discussion of the specific problem. On the other hand and again without discussion of the specific problem, the same court in Commonwealth ex rel. Harman v. Burke, 171 Pa. Superior Ct. 547, 550, in Commonwealth ex rel. Kunkle v. Claudy, 171 Pa. Superior Ct. 557, 559, and in Commonwealth ex rel.

McDevitt v. Burke, 166 Pa. Superior Ct. 194, 198, sanctioned a computation of sentences which was based on credit given against the original sentence for time spent in prison awaiting trial for the subsequent offense. In none of these cases did the Superior Court consider and decide the exact point involved, probably because as is true in our case, the prisoner's eventual date of release would be the same on either application of the time served in prison awaiting trial.

Commonwealth ex rel. Dion v. Martin, 183 Pa. Superior Ct. 310, also was decided on another point but the court used the following language that would clearly indicate that credit for imprisonment awaiting trial is to be given against that specific sentence, page 314:

"In disposing of this contention the lower court stated: '. . . we naturally directed in the Order that the jail sentence imposed should be computed from November 14, 1951, not for the purpose of indicating that the sentence imposed shall run concurrently with a non-served sentence as a parole violator, but for the purpose of giving the defendant the benefit of the almost six months period of time served between November 14, 1951, and May 7, 1952, that he served in the Columbia County Jail.' This was in accord with the Act of May 28, 1937, P. L. 1036, §1, 19 PS §894, which provides that a sentence be computed from the date of commitment for the offense for which the sentence is imposed. Relator was a parolee at the time, and the only effect of designating the date of first commitment as the computation date of the last sentence was to fix the credit to be allowed him on the service of that sentence."

The answer to every one of relator's contentions is inherent in the Superior Court's fiat that the credit is to be given on the sentence for the offense upon which the prisoner has been held.

Relator calls attention to the undeniable fact that frequently a parole violator does not seek bail on a new offense because it would merely invite a Parole Board detainer.

Suffice it to say that in this case it would not work an injustice because the date of eventual discharge is neither advanced nor retarded by application of prison time to the last rather than to the former sentence. When a case arises that may work an injustice in not crediting to an old offense time awaiting trial on a new offense, we shall be prepared to rule upon it. We have not held that the Parole Board may not apply time in prison awaiting trial to an old offense; we have simply held that where there is a sentence of imprisonment on a new offense to which it can apply, the law states that it shall be so applied.

Now, June 10, 1957, relator's rule to show cause why a writ of habeas corpus should not issue is discharged and the issuance of a writ is denied.